UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X

JANELLE MATTHIAS, individually and
as administratrix[1] of the Estate of
KEVON BRIAN MUSTAFA, deceased,

                    *Plaintiff*,

          -*against*-

UNITED STATES OF AMERICA;

                    *Defendant*.

---------------------------------X

<u>**MEMORANDUM AND ORDER**</u>

18-cv-3568(KAM)(GMJ)

**KIYO A. MATSUMOTO, United States District Judge:**

On April 27, 2018, Janelle Matthias ("plaintiff"),
individually and as administratrix of the Estate of Kevon Brian
Mustafa, her deceased infant son, filed this action against the
United States ("defendant" or "Government"), pursuant to the
Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671, *et
seq.*, claiming that from May 11, 2015 to September 22, 2015,
plaintiff was the recipient of medical treatment that she
alleges failed to meet the standards of adequate medical care,
and, her allegation continues, such negligence ultimately caused
the death of her infant son, born and deceased on September 22,
2015.  (ECF No. 1, Plaintiff's Verified Complaint filed 6/19/18
("Compl.").)  Plaintiff brings claims of negligent medical
treatment and care, failure to obtain informed consent,

---
[1] Plaintiff's status as administratrix is questioned and discussed *infra*.

1

negligent hiring and retention, and loss of services. (*See* Compl.)  On April 25, 2019, plaintiff amended the complaint, adding another cause of action for wrongful death.  (ECF No. 9, Plaintiff's Amended Complaint filed 4/26/19 ("Amended Compl.") at 14-15.)[2]  On June 25, 2019, the United States moved to dismiss the complaint, claiming this court lacks subject matter jurisdiction due to plaintiff's failure to exhaust administrative remedies pursuant to Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 21, Gov't Memorandum in Support of Motion to Dismiss filed 9/19/19 ("Gov't Mot.").)  Plaintiff opposes the Government's motions in their entirety.  (ECF No. 24, Plaintiff's Memorandum in Opposition of Defendant's Motion to Dismiss filed 9/19/19 ("Pl. Mem. in Opp.").)[3]

For the reasons stated below, the court finds that plaintiff exhausted all administrative remedies before bringing the instant action regarding her individual negligence and medical malpractice claims.  Plaintiff, however, did not satisfy

---

[2]    Plaintiff's original complaint is available at ECF No. 1, pp. 1-15. Plaintiff's amended complaint is available at ECF No. 9, pp. 1-18. This order refers only to plaintiff's amended complaint. *See generally, Amended Compl.*
[3]    Plaintiff's Memorandum in Opposition of Motion to Dismiss was filed onto the docket twice. *Compare* ECF No. 17, filed 8/23/19, *with* ECF No. 24, filed 9/19/19. The court refers throughout to Pl. Mem. In Opp. located at ECF No. 24.

the exhaustion and presentment requirement for the claims
brought on behalf of the deceased infant's estate and, as such
the court does not have subject matter jurisdiction over any of
the deceased's estate's claims.  The court further holds that
the negligent hiring and retention claim falls within the
discretionary function exception to the Federal Tort Claims Act,
and is denied.  Lastly, the court finds that plaintiff failed to
state a claim upon which relief may be granted with respect to
her claims of wrongful death and loss of services.  Accordingly,
defendant's motion to dismiss is DENIED in part and GRANTED in
part.

<u>**BACKGROUND**</u>

The facts, as stated in plaintiff's amended complaint
and in exhibits[4] attached to the plaintiff's memorandum in
opposition to defendant's motion to dismiss,[5] are as follows.

---

[4]     All exhibits referenced herein are available at ECF No. 24, as
attachments 24-1 to 24-18.  Plaintiff's counsel incorrectly filed a
declaration with each exhibit.  Further, Exhibits 12-15 have been incorrectly
filed onto ECF.  Thus, ECF No. 24-15, Declaration Exhibit 15, is Plaintiff's
Exhibit 12; ECF No. 24-12, Declaration Exhibit 12 is Plaintiff's Exhibit 13;
ECF No. 24-13, Declaration Exhibit 13 is Plaintiff's Exhibit 14, and ECF No.
24-14, Declaration Exhibit 14 is Plaintiff's Exhibit 15.  For the purpose of
clarity, all exhibits will be referenced by plaintiff's exhibit designation,
<u>not</u> by their incorrect filing designations onto ECF.

[5]     "Where subject matter jurisdiction is challenged,...a court may consider
materials outside the pleadings, such as affidavits, documents and
testimony." *Silva v. Farrish*, 18-CV-3648 (SJF) (SIL) 2019 WL 117602, at
\*4(E.D.N.Y. Jan. 7, 2019)(quoting *Forbes v. State Univ. of New York at Stony
Brook*, 259 F.Supp.2d 227, 231-32 (E.D.N.Y. 2003) ("In a Rule 12(b)(1) motion,
the Court may consider affidavits and other material beyond the pleadings to
resolve the jurisdictional question." (citation omitted)).

On September 22, 2015, at 8:04 p.m., plaintiff gave birth to an infant son, Kevin Brian Mustafa, at Brooklyn Hospital Center.  (*See* ECF No. 24-14, Plaintiff's Exhibit 15, Certificate of Birth – Deceased.)  On the birth certificate, hospital administrator Collin Ferdinand certified and signed that the infant was born alive, but tragically passed away three hours later.  *Id.*[6]  An autopsy was performed on the deceased infant by Patrick E. LeBlanc, M.D., on October 1, 2015, and the report was later signed by Tiangui Huang, M.D. on October 9, 2015. (Pl. Exh. 16, Autopsy Report, at 3.)  The report stated that the deceased infant was born via caesarian section "due to prolonged rupture of membrane, and a non-reassuring fetal heart tone." (*Id.* at 4.)   The deceased infant was noted to have "poor respiratory affect," was intubated, and "PPV was initiated." (*Id.*)  Post-intubation, the infant's condition stabilized, and he was brought to the NICU to recuperate.  (*Id.*)  The report stated that the infant expired approximately three hours after his birth, at 11:13 p.m. on September 22, 2015. (*Id.* at 3-4.) Analysis of the deceased infant's lung showed "marked hyaline membrane – a pathological finding for respiratory stress syndrome – on the background of bacterial overgrowth."  (*Id.*)

---

[6]    Plaintiff first alleged that the infant was stillborn, later alleging that the infant lived for three hours.  (*Compare* Pl. Mem. in Opp. pp. 15 *with* pp. 19.)  The court finds that the infant was born alive and lived for three hours, based on review of the birth certificate and the autopsy report.  (*See* Pl. Exh. 15, 16 (ECF Nos. 24-14, 24-16).)

The cause of death was noted as "respiratory distress syndrome due to immaturity" which was later denoted in parenthesis as "hyaline membrane disease."  (*Id.*)

Plaintiff filed an action alleging medical malpractice and wrongful death in the Supreme Court of New York, Kings County under Index No. 514176/2016, against defendants Errol Byer, M.D., Frederick Stanton, M.D., Alessia Perry, M.D., Brooklyn Hospital Center, and Brooklyn Plaza Medical Center P.C., a health center federally qualified under the Department of Health and Human Services ("DHHS"). (Pl. Mem. in Opp. at 2.) Plaintiff filed the summons and verified complaint on August 10, 2016.  (*See* Pl. Exh. 2.)

Plaintiff lodged similar allegations in her state court complaint as those at issue here; namely, that the medical treatment provided by Errol Byer, M.D., Frederick Stanton, M.D., and Alessia Perry, M.D., beginning on or about May 11, 2015 and continuing until September 22, 2015, departed from the accepted medical standards of care and caused her to suffer grave bodily injury, complications, additional surgery and treatment, mental anguish, and led to the wrongful death of her infant son.  (Pl. Exh. 2 at ¶¶ 16, 28, 40, 52, 69.)  She further claimed that her alleged injuries were due to the negligent hiring and retention of aforementioned physicians by the Brooklyn Hospital Center and Brooklyn Plaza Medical Center, P.C..  (*Id.* at ¶ 74-76.)

Plaintiff also claimed that her son suffered a wrongful death as a result of her negligent medical treatment.  (*Id.* at ¶ 80.) Lastly, plaintiff asserted her injuries were caused by the defendants' failure to obtain her informed consent for the treatment rendered.  (*Id.* at ¶ 82-84.)

On April 28, 2017, the United States of America removed the action to the United States District Court for the Eastern District of New York, pursuant to the FTCA, 28 U.S.C. §§ 1346, 2401, 2671 *et seq.*, which allows the United States of America to substitute itself as a party defendant where a federal employee was acting within the scope of employment at the time the alleged tortious acts or omissions took place.  *See* 28 U.S.C. § 2679 (d)(1).

In a related action, this court previously held that because Brooklyn Plaza Medical Center was a federally supported medical center and deemed eligible by DHHS for coverage under 42 U.S.C. § 233(g)-(h), and defendants Errol Byer, M.D., Frederick Stanton, M.D., and Brooklyn Plaza Medical Center P.C., were acting in the course and scope of their employment as federal employees at the time of the events alleged, Pl. Exh. 4 at 4, the certification and notice of substitution of the United States in place of Errol Byer, M.D., Frederick Stanton, M.D., and Brooklyn Plaza Medical Center P.C., was proper.  (*See* Pl. Exhs. 10-14 (ECF Nos. 24-10, 24-11, 24-15, 24-12, 24-13);

*Janelle Matthias, individually and as the administrator of the Estate of Kevon Brian Mustafa, deceased v. Errol Byer, M.D., Frederick Stanton, M.D., Alessia Perry, M.D., Brooklyn Hospital Center, and Brooklyn Plaza Medical Center P.C.,* No. 17-cv-02546 2017 WL 4314500 (E.D.N.Y. Aug. 20, 2019) (Irizarry, J.) (Levy, M.J.)).

In that previous action, defendant United States of America filed a motion to dismiss, alleging that this court lacked subject matter jurisdiction, which the other defendants supported with a memorandum of law in support of defendant's motion to dismiss. (Pl. Exh. 3.)  The gravamen of the United States' motion was that the plaintiff had not exhausted her administrative remedies before filing, since she had not submitted an administrative tort claim to the DHHS for her alleged injuries.  (*Id.* at 2; Pl. Exh. 4 at 3.)

The court in 17-cv-2546 granted defendant's motion to dismiss, pursuant to a Stipulation and Order of Partial Dismissal, Modification of Caption and Remand.  (Pl. Exh. 4.) Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii), the claims against Errol Byer, M.D., Frederick Stanton, M.D., and Brooklyn Plaza Medical Center P.C. were dismissed with prejudice, and the claims against the United States of America were dismissed without prejudice, with the remaining claims remanded to the New York State Supreme Court, Kings County.  (*Id.* at 6.)

7

On August 3, 2017, plaintiff submitted a Standard SF-95 Claim Form to the US Department of Health and Human Services alleging negligence and wrongful death.  (Pl. Exh. 10.)  Under Item 10, titled "Personal Injury/ Wrongful Death" plaintiff wrote:

> Due to the negligence and carelessness of Errol Byer, M.D., Frederick Stanton, M.D., and Alessia Perry, M.D., Janelle Matthias's son, Kevin Brian Mustafa died at birth due to an irregular heartbeat and Janelle Matthias has suffered pain, trauma and emotional distress.[7]

Plaintiff added an additional page stating the basis of her claim as:

> On or about May 11, 2015, continuing to, through and including September 22, 2015, at or near the Brooklyn Plaza Medical Center P.C., the Brooklyn Hospital Center, Errol Byer, M.D., Frederick Stanton, M.D., and Alessia Perry M.D., were negligent, careless and departed from the accepted standards of medicine by failing to diagnose Janelle Matthias and treat her given her medical history, signs and symptoms, and complaints upon presentation, eventually leading to the untimely and wrongful death of her son, Kevon Brian Mustafa; in negligently proscribing medication that harmed Janelle Matthias; in failing to provide a prenatal and neonatal consultation; in failing to properly and timely diagnose Janelle Matthias with urinary tract infection; in failing to monitor the effects of the medications given to Janelle Matthias during childbirth.[8]

---

[7] Pl. Exh. 10 at 3.
[8] *Id*. at 5.

On August 21, 2017, plaintiff's counsel received correspondence from Dorothea P. Koehler, Paralegal Specialist at DHHS, acknowledging receipt of the administrative tort claim, filed on August 8, 2017, and identified as Claim No. 2017-0528a.  (Pl. Exh. 11.)  The letter requested the necessary documentation to proceed with the claim. (*Id.*)  On December 8, 2017, plaintiff's counsel sent itemized bills, medical records, and funeral expenses, pursuant to the DHHS's request. (Pl. Exh. 12 (ECF 24-15).)  On February 12, 2018,[9] plaintiff's administrative tort claim was denied in a letter signed by William A. Bigelow, Deputy Associate General Counsel for the Claims and Employment Law Branch.  (Pl. Exh. 14 (ECF No. 24-13).)  The letter notified plaintiff that she was entitled to challenge the agency's determination by filing an action against the United States in the appropriate district court within six months from the date of the mailing of the agency's determination.  (*See* 28 U.S.C. 2401(b); *Id.* at 4.)

## STANDARD OF REVIEW

Defendant brings its motion to dismiss both for lack of subject matter jurisdiction under Rule 12(b)(1), and for failure

---

[9]     Pl. Exh. 14 (ECF No. 24-13) at 3.  The stamped date appears to be February 12, 2018.  This is consistent with plaintiff's memorandum in opposition, that also indicates that Pl. Exh. 14 (ECF No. 24-13) is dated February 12, 2018.

to state a claim under Rule 12(b)(6), in the context of the Federal Tort Claims Act ("FTCA").  The relevant standards are set forth below.

## I.  Rule 12(b)(1)

"'A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'" *Roman v. C.I.A.*, No. 11-CV-5944, 2013 WL 210224, at *4 (E.D.N.Y. Jan. 18, 2013) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  It is well-settled that the "plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence*." Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Luckett v. Bure*, 290 F.3d 493, 496 (2d Cir. 2002)).  In reviewing a Rule 12(b)(1) motion to dismiss, the court "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to plaintiff[]." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).  Moreover, the court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." *Id.*

## II. Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 65 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although the court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007), plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (alterations in original) (internal quotation marks omitted).

## III. Federal Tort Claims Act

The Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.,* waives the sovereign immunity of the United States in limited circumstances. In relevant part, the FTCA authorizes suits against the federal government to recover damages:

> for injury or loss of property, or personal
> injury or death caused by the negligent or
> wrongful act or omission of any employee of the
> Government while acting within the scope of his
> office or employment, under circumstances where
> the United States, if a private person, would be
> liable to the claimant in accordance with the law
> of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

One of the exceptions to the FTCA's waiver of sovereign immunity is the "discretionary function exception," ("DFE") which provides that Congress's authorization to sue the United States for damages does not apply to any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The discretionary function exception "'marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals.'" *Berkovitz v. United States*, 486 U.S. 531, 536 (1988) (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984)). Because the FTCA operates as a grant of subject matter jurisdiction to the federal courts, "a finding that the discretionary function exception applies is tantamount

to holding that the court lacks jurisdiction." *Caban v. United States*, 671 F.2d 1230, 1235 n.5 (2d Cir. 1982).

The plaintiff bears the burden of establishing, by a preponderance of the evidence, that the court retains authority to adjudicate a case. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *Loew v. U.S. Postal Serv.*, No. 03-CV-5244, 2007 WL 2782768, at *4 (E.D.N.Y. Feb. 9, 2007).

Generally, a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) and a motion to dismiss for failure to state a claim under Rule 12(b)(6) are reviewed under the same standard, which requires a court to accept as true the facts alleged in the complaint, and to draw all reasonable inferences in favor of the plaintiff. *Loew*, 2007 WL 2782768, at *4. Where, however, "the jurisdictional challenge is based on the FTCA, the government receives the benefit of any ambiguities." *Id.*; *Moreno v. United States*, 965 F. Supp. 521, 524 (S.D.N.Y. 1997) ("Because the FTCA creates a waiver of sovereign immunity, it is strictly construed and all ambiguities are resolved in favor of the United States."). Subject matter jurisdiction "must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (internal quotation marks and citation omitted). A plaintiff bears "the initial burden to state a claim that is not

13

barred by the DFE." *Molchatsky v. United States*, 713 F.3d 159, 162 (2d Cir. 2013); *see Wang v. United States*, 61 F. App'x 757, 759 (2d Cir. 2003) ("Plaintiffs failed to meet their initial burden of pleading facts which would support a finding that the conduct of the investigative agents fell outside the scope of the exception.").

## <u>DISCUSSION</u>

### I.   The FTCA's Exhaustion and Presentment Requirement

To bring an FTCA claim in federal court, plaintiff must first present the claim to the appropriate federal agency and receive a written denial from that agency, or may file an action sixty days after the claim is presented, if the agency fails to respond.   *See* 28 U.S.C. § 2675(a) (no action shall be instituted "unless the claimant shall have first presented the claim to the appropriate Federal agency and his [or her] claim shall have been finally denied by the agency in writing and sent by certified or registered mail").   *See also* 28 U.S.C. § 2679(d)(5) (providing that "[w]henever an action or proceeding in which the United States is substituted as the party defendant . . . is dismissed for failure first to present a claim" to the appropriate federal agency, "such a claim shall be deemed to be timely presented" if (1) "the claim would have been timely had it been filed on the date the underlying civil action was commenced;" and (2) "the claim is presented to the appropriate

Federal agency within 60 days after dismissal of the civil action").

> FTCA claims:
>
> > shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident; and the title or legal capacity of the person signing, and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.

28 C.F.R. § 14.2.  Additionally, though a personal injury claim "may be presented by the injured person, his duly authorized agent, or legal representative," 28 C.F.R. § 14.3(b), a wrongful death claim may be presented only by "the executor or administrator of the decedent's estate, or by any other person legally entitled to assert such a claim in accordance with applicable State law."  28 C.F.R. § 14.3(c).  Under New York state law, a "personal representative," is defined as someone that "received letters to administer the estate of a decedent," and is the only party who may bring a wrongful death or survival action.  *See* N.Y. Est. Pow. and Trst § 5-4.1; *id.* at § 1-2.13; *see also* Fed. R. Civ. P. 17 (b)(3) (requiring federal courts to look to state law when determining capacity to bring suit).

15

First, the court addresses defendant's contention that plaintiff failed to include evidence of her authority as personal representative of the estate of the deceased infant Mustafa, and thus failed to satisfy the presentment requirement regarding her claims on behalf of the estate. (Def. Reply at 4.) Second, the court addresses defendant's argument that plaintiff's individual claim does not satisfy the FTCA's presentment requirement. (Def. Reply at 3; 28 U.S.C. § 2675(a).) In response to defendant's arguments, plaintiff asserts that she has satisfied the presentment requirement for herself and for the deceased infant's estate, pointing to the correspondence between plaintiff's counsel and DHHS, as well as the agency's denial of claim letters. (Pl. Mem. in Opp. at 16-17.)

## A. Plaintiff's FTCA Claim Brought as Administratrix of Deceased Infant's Estate

Plaintiff has failed to bring a claim on behalf of the estate of the deceased infant, as she has not been properly appointed administratrix under New York law.

Although strict compliance with 28 C.F.R. § 14.2 is not a jurisdictional requirement, a claim must "provide minimal notice that (1) gives the agency written notice of [the] claim sufficient to enable the agency to investigate and (2) places a

value on [the] claim." *Byrne v. United States*, 804 F. Supp.
577, 579 (S.D.N.Y. 1992) (internal quotations omitted). S*ee,
e.g., Romulus v. United States* (*Romulus II*), 160 F.3d 131, 132
(2d Cir. 1998); *State Farm Mut. Auto. Ins. Co. v. U.S.*, 326 F.
Supp. 2d 407, 413 (E.D.N.Y. 2004) ("[t]he Second Circuit has not
determined whether a failure to provide further information—
beyond a notice of claim and a sum certain—is fatal to a court's
jurisdiction. This court must, therefore, determine whether the
plaintiff provided the Navy with sufficient information about
the claim to constitute adequate notice required for
jurisdiction."); *Lee v. U.S. Dept. of Army*, No. 11-CV-331 (RRM)
(CLP) 2013 WL 4048329, at *4 (E.D.N.Y. Aug. 9, 2013), ("[n]otice
need not meet formal pleading requirements as long as it is
specific enough to serve the purposes underlying § 2675(a)-- 'to
ease court congestion and avoid unnecessary litigation, while
making it possible for the Government to expedite the fair
settlement of tort claims.'").

       Similar to the instant case, "[i]n *Byrne*, the court
examined whether the plaintiff established subject matter
jurisdiction where his notice of claim was timely, [yet]
deficient pursuant to 28 C.F.R. § 14.2 because it failed to
present evidence of plaintiff's authority to present the
claim." *D'Angelo v. United States*, No. 14-CV-482 (SJF) (GRB)
2016 WL 6988807, at *3 (E.D.N.Y. Nov. 15, 2016) (internal

17

quotations and citations omitted) (discussing *Byrne*, 804 F. Supp. at 579); *see also* 28 C.F.R. § 14.2(a).  The *Byrne* court held that the notice of claim was sufficient, despite the plaintiff not having been appointed as the personal representative of the estate at the time of the filing of the claim, because plaintiff  "provided the government with the minimal notice required under the FTCA so that it could adequately investigate the claim." *Id.* at 582.  Additionally, the court permitted the claim to proceed because the plaintiff was the executor *at the time the action commenced* in federal court.  *Id.* at 582 (emphasis added).

Following *Byrne*, a later case from this court discussed the manner in which FTCA actions have been allowed to proceed in court even "when the administrative claim had been brought by a person not formally authorized under the regulations to make such a claim" so long as the agency was given minimal notice.  *Genao v. U.S.*, No. 08-cv-878 (NG) (SMG) 2010 WL 3328017, at *3 (E.D.N.Y. Aug. 19, 2010) (citing *Knapp v. United States,* 844 F.2d 376, 380 (6th Cir. 1988) (holding that even though plaintiff had not "received letters of authority when she presented [her administrative claim], this circumstance had no effect on her right to sue under the FTCA *once she had qualified*") (emphasis added).

Unlike the instant case, in *Genao* the issue presented was timeliness, as all claimants were appointed personal representatives after the two-year statutory period expired. Thus, although the claimant in *Genao* had not procured the necessary letters of administration at the time of filing the administrative claim, and had therefore not provided the necessary "evidence of authority," 28 C.F.R. § 14.2, by the time claimant filed suit in federal court, claimant was officially appointed as the estate representative.

On these facts the courts have permitted similar claims to proceed, because the administrative claims provided sufficient minimal notice, and at the commencement of the federal actions, the claimants in the cases referenced, *supra*, were officially personal representatives. *Knapp,* 844 F.2d at 380 (requirements of 28 U.S.C. § 2675(a) were met because Mrs. Knapp had provided written notice sufficient to enable the agency to investigate and had placed a value on her claim though she was only appointed personal representative after the two-year statute of limitations expired); *Ford,* 640 F. Supp. 2d at 1070 (same); *Genao*, 2010 WL 3328017, at *3 (holding plaintiff is entitled to equitable tolling of the FTCA limitations periods due to extraordinary circumstances).

Here, plaintiff's alleged injuries took place from May 11, 2015 to September 22, 2015, (Amended Compl. at ¶ 7, 17, 30,

19

46), and the administrative claim form, SF-95, was submitted on August 3, 2017.  (*Id.* at ¶ 3; Pl. Exh. 10.)  Unlike the cases discussed above, plaintiff timely met the requirements of 28 U.S.C. § 2675(a) by filing the claim form prior to the expiration of the two year statute of limitations, and thus timeliness is not at issue in this case.  *Byrne*, 804 F. Supp. at 579 (discussing deficiency of notice regarding 28 C.F.R. § 14.2, where notice was timely in accordance with § 2675).

Plaintiff's circumstances however, are also distinct from *Genao*, *Ford*, and *Knapp*, in that, to the court's knowledge, plaintiff has not been appointed as personal representative of the estate of the deceased infant, and as such, cannot bring claims on behalf of the estate of the deceased.  *See Health v. Banks*, 15-cv-4228 (MDG) 2016 WL 5716817, at *5 (E.D.N.Y. Sep. 30, 2016) (quoting *Palladino v. Metro. Life Ins. Co.,* 590 N.Y.S.2d 601, 602 (App. Div.3d Dep't 1992) ("[o]nly a duly appointed personal representative may bring suit on behalf of a decedent" in New York.); *Garmon v. Cnty. of Rockland,* No. 10 Civ. 7724(ALC)(GW), 2013 WL 541380, at *3 (Feb. 11, 2013)(quoting *Palladino,* 590 N.Y.S.2d at 602 ("Inasmuch as letters of administration have not been issued to plaintiff, he has no standing to sue."). *See also Purcell ex rel. Estate of Tyree v. City of New York*, 18-CV-3979 (PKC)(RLM) 2020 WL 2559796, at *3 (E.D.N.Y. May 19, 2020)(finding plaintiff

initially lacked standing to sue on behalf of the decedent's estate since she has not received letters of administration, and only permitting claims to proceed once the deficiency was cured).  Plaintiff offers no contradictory evidence or argument. Thus, the court finds that plaintiff failed to satisfy the presentment requirement with respect to her claims brought on behalf of the estate of the deceased infant.

For the foregoing reasons, the court dismisses the claims brought on behalf of the estate of the deceased infant.

**B. Plaintiff's Individual FTCA Claim**

Plaintiff's individual administrative claim meets the standard for minimal notice.  Plaintiff properly filed the SF-95, alleged facts sufficient for the agency to investigate the claim, and provided a claim amount in a sum certain.

First, defendant argues that plaintiff's counsel signed the administrative claim form, SF-95, for plaintiff's personal injury claim without providing "evidence of his or her authority to present a claim on behalf of the plaintiff" by failing to list his or her identity or relationship to the plaintiff or the estate of the deceased.  (Def. Reply at 3.) However, a review of Pl. Exh. 13 (ECF No. 24-12), the enclosure letter attached by plaintiff's counsel with the DHHS's requested documentation, establishes that the fourth listed attachment is a power of attorney form.  (Pl. Exh. 13.)  Defendant concedes

21

that "plaintiff's counsel signed the SF-95." (Def. Mem. at 8.)
As the power of attorney form provided to the DHHS set forth the
identity of plaintiff's counsel, the court finds the plaintiff
clearly provided evidence of authority, and properly presented
her individual claims to the agency.  A further showing of
"evidence of authority" is unnecessary. *Byrne*, 804 F. Supp. at
579*; see also* 28 C.F.R. § 14.2(a).

Second, the facts plaintiff provided were sufficient
to investigate a claim. *See Romulus II*, 160 F.3d at 132 ("a
notice of claim filed pursuant to the FTCA must provide enough
information to permit the agency to conduct an investigation and
to estimate the claim's worth.")  Plaintiff provided names of
the physicians under agency employ, the alleged malpractice, and
the cause of death that was the subject of the
suit. *State Farm,* 326 F. Supp. 2d at 414 (holding that
plaintiff satisfied presentment where the agency "clearly had a
detailed understanding of the medical evidence regarding the
injury ... indicating a description of the accident and doctors'
findings in detail" and where "plaintiff did not refuse to
cooperate with the [agency's] investigation."); s*ee also* Pl.
Exh. 13 (ECF No. 24-12) (enclosure letter complying with DHHS's
documentation request).

Third, plaintiff specified a sum certain of
$20,000,000 on the administrative claim form.  (Pl. Exh. 10 at

3. *See Keene Corp. v. United States*, 700 F.2d 836, 841 (2d Cir. 1983) (holding that failure to state a sum certain in the claim for damages renders the notice of claim deficient)).

Fourth, plaintiff's notice of claim was timely, because it was brought within the two year statute of limitations.  28 C.F.R. § 14.2(a).  Accordingly, the court finds that the agency had sufficient notice regarding plaintiff's independent claims.[10]

In summary, as there is no evidence to demonstrate that plaintiff was the personal representative of the decedent at that time of filing the administrative claim or the instant action, the court dismisses the claims brought by the plaintiff on behalf of the decedent's estate.  With respect to plaintiff's claims brought on her own behalf, the court finds that plaintiff has satisfied the presentment requirement pursuant to § 2675(a).  Thus, this court has subject matter jurisdiction over this action.  Defendant's motion to dismiss is DENIED with respect to the plaintiff's individual claims and GRANTED with respect to claims concerning the deceased infant.

---

[10]    The cases cited by defendant to support its contention are unpersuasive, as they are against the weight of authority in this circuit and district.  *See Byrne*, 804 F. Supp. at 582 (rejecting the government's contention that the court does not have jurisdiction on the basis of *Del Valle* as "against the weight of authority.").

## II. Plaintiff's Informed Consent Claim

Defendant next argues that plaintiff's informed consent claim cannot stand, because the administrative claim form originally filed by the plaintiff did not state a distinct claim for lack of informed consent.  (Def. Mem. at 9; *see also* Pl. Exh. 10.)   Plaintiff concedes that she did not allege a separate claim for informed consent on the SF-95 form, yet contends that informed consent for medical treatment is considered part of a medical malpractice claim.  (Pl. Mem. in Opp. at 17, citing *Soriano v. United States*, No. 12 Civ. 4752 (VB) 2013 WL 3316132, at *7 (S.D.N.Y. Jul. 1, 2013) (finding informed consent was considered part of a medical malpractice claim and thus not barred by failure to assert in administrative claim form)).

In the instant case, the facts alleged in plaintiff's administrative claim failed to put the DHHS on notice of the informed consent claim.  The FTCA's exhaustion requirement is not met where the "initial administrative claim asserted only medical malpractice and did not include an informed consent claim," because, "[i]n this Circuit, a Notice of Claim filed pursuant to the FTCA must provide enough information to permit the agency to conduct an investigation and to estimate the claim's worth." *Mayes v. United States*, 790 Fed. App'x. 338, 339-40 (2d Cir. 2020) (summary order) (quoting *Romulus v. United*

24

*States*, 160 F.3d 131, 132 (2d Cir. 1998) (per curiam)).  The relevant inquiry is whether the substance of the administrative claim, not the federal court complaint, put the relevant federal agency on notice.  *Godinez-Torres v. United States*, No. 14CV1097CBAPK, 2016 WL 11670284, at *5 n.7 (E.D.N.Y. Mar. 31, 2016).  *See also M.A.R. ex rel. Reisz v. United States*, No. 09-CIV-1727 (LTS) 2009 WL 3877872, at *1 (S.D.N.Y. Nov. 18, 2009) (finding plaintiff's administrative claim was insufficient to put the government on notice that she might assert a lack of informed consent claim); *A.Q.C. ex rel. Castillo v. United States*, 715 F. Supp. 2d 452, 457 (S.D.N.Y. 2010), *aff'd*, 656 F.3d 135 (2d Cir. 2011) (holding informed consent claim was barred because plaintiff's administrative claim only alleged medical malpractice); *Hersko v. United States*, No. 13-CV-3255 (MHD) 2015 WL 6437561, at *19 (S.D.N.Y. Oct. 20, 2015)(same). *But see Soriano*, 2013 WL 3316132, at *7 (citing *Frantz v. United States*, 29 F.3d 222, 224 (5th Cir. 1994) (finding an informed consent claim in FTCA action is necessarily contained within a medical malpractice claim)).

Plaintiff alleges in the administrative claim form that the treating physicians failed to diagnose and treat her given her medical history, signs, symptoms, and complaints; negligently prescribed medication that harmed her; failed to diagnose her urinary tract infection in time; failed to provide

25

a prenatal or neonatal consultation; and failed to monitor the effects of the medications given to plaintiff during childbirth. (Pl. Exh. 10.)  Though the claim adequately refers to negligence in plaintiff's medical treatment, it provides no detail as to any alleged failure on the part of the physicians to obtain informed consent.  (*Id.*)  Plaintiff also does not produce her medical records to demonstrate a lack of informed consent, nor does she explain or discuss where and when this alleged omission occurred.  *Godinez-Torres*, 2016 WL 11670284, at *6 (citing *M.A.R.*, 2009 WL 3877872, at *4 (holding administrative claim gave no notice of informed consent claim where claim form "was replete with allegations of various omissions ... during prenatal care, delivery and neonatal care" but no language pertaining to consent)).

Accordingly, the court GRANTS the defense's motion to dismiss the plaintiff's informed consent claim on the grounds that plaintiff did not exhaust her administrative remedies.

### III. Plaintiff's Negligent Hiring and Retention Claim
#### A. Two-Pronged Discretionary Function Exception Test

Under the Supreme Court's *Berkovitz-Gaubert* test, the discretionary function exception precludes suits against the United States "only if two conditions are met: (1) the acts alleged to be negligent must be discretionary, in that they

26

involve an 'element of judgment or choice' and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in 'considerations of public policy' or susceptible to policy analysis." *Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000) (citing *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991) and *Berkovitz*, 486 U.S. at 536-37)).

Under the first prong of the test, "it is the nature of the conduct, rather than the status of the actor" that determines whether a challenged act is discretionary. *Gaubert*, 499 U.S. at 322. If there exists a mandatory federal statute, regulation, or policy that "specifically prescribes a course of conduct for an employee to follow," the first prong of the test requiring an element of judgment or choice is not met because "the employee has no rightful option but to adhere to the directive." *Berkovitz*, 486 U.S. at 536. If there is no established explicit or implicit governmental policy, or if a policy allows a government agent to exercise discretion, then under the second prong of the *Berkovitz-Gaubert* test, the court must determine whether the conduct "can be said to be grounded in the policy of the regulatory regime," focusing "not on the agent's subjective intent . . . but on the nature of the actions taken and on whether they are susceptible to policy analysis."

*Gaubert*, 499 U.S. at 325. If there exists a regulation allowing employee discretion, the "very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Gaubert*, 499 U.S. at 324 (internal citation omitted).

If the challenged conduct involved an element of judgment or choice, then under the second prong of the discretionary function exception test, that judgment or choice must be grounded in considerations of public policy or susceptible to policy analysis to be protected by the discretionary function exception. *See Coulthurst*, 214 F.3d at 109; *Gaubert*, 499 U.S. at 325-25; *Varig Airlines*, 467 U.S. at 814 (noting that the discretionary function exception is intended to shield from "judicial second-guessing" judgments "grounded in social, economic, and political policy").

Accordingly, the second prong of the test distinguishes between discretionary decisions that are grounded in public policy considerations, and decisions that are made out of carelessness or laziness. *Gaubert*, 499 U.S. at 324-25, 325 n.7 (remarking that while a government agent who drives a car while on a government mission exercises "discretion" in driving the car, any decisions made to drive the car are not grounded in

public policy, and therefore the discretionary function
exception would not protect negligent driving).

### B. Applying the Discretionary Function Test

In her amended complaint, plaintiff alleges in her
fourth cause of action that defendant negligently "granted
and/or renewed" Dr. Byer's and Dr. Stanton's employments without
proper consideration of the doctors' professional qualifications
or competence.  (Amended Compl. at ¶ 61-63.)  Defendant argues
that the discretionary function exception to the FTCA bars
plaintiff's negligent hiring and retention claim.  (Def. Mem. at
10-15.)  Plaintiff responds that the alleged negligence in
hiring or retaining unqualified physicians does not fall within
the exception, because "scientific or professional judgments,"
especially concerning safety, do not usually implicate policy
decisions.  (Pl. Mem. in Opp. at 21.)

To survive a motion to dismiss, a negligent hiring
claim "must allege facts which would support a finding that the
challenged actions are not the kind of conduct that can be said
to be grounded in the policy of the regulatory regime." *Gaubert*,
499 U.S. at 324-25. *See also Wang v. United States*, 61 Fed.
App'x. 757, 759 (2d Cir. 2003) (finding plaintiffs failed to
meet their burden of demonstrating how investigative agents
conduct fell outside the exception).  Here, plaintiff merely
asserts that defendant failed to properly investigate the

qualifications and competence of their medical personnel before granting or renewing their employment, but does not allege any specific facts or details, or suggest that defendants' negligent hiring and retention practices fell outside the exception. (Amended Compl. at ¶ 61-63); *see Saint-Guillen v. United States,* 657 F. Supp. 2d 376, 387 (E.D.N.Y. 2009) (Irizarry, J.)(stating that a pleading deficiency regarding negligent hiring or retention alone is grounds for dismissal)); *see generally Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007)(bare factual allegations will not satisfy Fed. R. Civ. P. 8, the plaintiff's pleading standard).

The court finds that plaintiff failed to plead sufficient facts to state a claim for negligent hiring. The court nevertheless briefly addresses the two prong analysis of the discretionary function test.

First, federally qualified health centers ("FQHCs"), deemed suitable for federal award coverage under the Public Service Health Act must comply with specific standards set forth in the Act and its implementing regulations, including review and verification of the professional credentials of its doctors. *See* 42 U.S.C. § 233(h)(2)(the Secretary must determine "that the entity...has reviewed and verified the professional credentials, references, claims history, fitness, professional review

organization findings, and license status of its physicians....").  *See also* 42 C.F.R. §§ 51c.101-c.507, 51c.303(p)(stating generally that health centers must "[p]rovide sufficient staff, qualified by training and experience, to carry out the activities of the center.").  The Act and corresponding protocols do not lay out specific means for professional review or verification, leaving review and verification up to the discretion of each health center.  Moreover, "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Conyers v. United States*, 16-CV-2816 (JFB) (SIL) 2018 WL 1157754, at *5 (E.D.N.Y. Jan. 31, 2018).

Here, the HRSA Compliance Manual discusses requirements for demonstrating compliance with the Public Service Health Act. *See* HRSA Health Center Program Compliance Manual, Ch. 5: Clinical Staffing, available at https://bphc.hrsa.gov/programrequirements/compliancemanual/chapter-5.html#5.1.  Under "related considerations," the manual describes "areas where health centers have discretion with respect to decision-making." *Id*.  Hiring decisions typically involve a great deal of discretion, including weighing, *inter alia*, "budgetary restraints, public perception, economic

31

conditions, individual backgrounds, office diversity, experience and employer intuition." *Saint-Guillen,* 657 F. Supp. 2d at 387. Thus, the court finds that because it remains within the individual FQHC's discretion to elect to hire their medical staff, and to determine the ultimate arbiter for review and verification of the clinical staff, the first prong of the discretionary function test is satisfied.

Under the second prong, "for a claim of negligent hiring or supervision to be barred by the discretionary function exception, the decision to hire or supervise the negligent employees must be 'grounded in considerations of public policy or susceptible to policy analysis.'" *Gibbons v. Fronton,* 533 F. Supp. 2d 449, 455 (S.D.N.Y. 2008). Hiring and retention of the employees of an FQHC usually involve policy decisions that clearly fall within the scope of the discretionary function exception. *See Burkhart,* 112 F.3d at 1217 (stating that hiring decisions "are surely among those involving the exercise of political, social, or economic judgment."). Thus, the court finds that the negligent hiring claim "necessarily involves the permissible exercise of policy judgment" which is precisely what the exception intends to avoid the litigation of. *Conyers*, 2018 WL 1157754, at *9.

Accordingly, the court finds that plaintiff's negligent hiring and retention claim would also be barred under

the discretionary function exception. For the foregoing reasons, defendant's motion to dismiss plaintiff's negligent hiring claim is GRANTED.

## IV. Plaintiff's Loss of Services and Wrongful Death Claims

### A. Loss of Services

Plaintiff alleges that she has been "deprived of her son's . . . love, services, affection, society, companionship, and economic support." (Amended Compl. at ¶ 75.) Defendant contends that plaintiff's loss of services claim must be dismissed pursuant to New York law that does not permit recovery for "loss of consortium" actions generally. (Def. Mem. at 16-18.) Plaintiff broadly responds that "there are no deficiencies in plaintiff's wrongful death action that warrant dismissal." (Pl. Mem. in Opp. at 19.)

Loss of services is a state law claim, and this court must apply the relevant state law. *See Martell v. Boardwalk Enterprises, Inc.,* 748 F.2d 740, 754 (2d Cir. 1984); *I.M. v. United States*, 362 F. Supp. 3d 161, 205 (S.D.N.Y. 2019); *Thomas v. New York City*, 814 F. Supp. 1139, 1154 (E.D.N.Y. 1993). New York law "denie[s] recovery for grief, loss of society, affection, conjugal fellowship and consortium" for death of a minor family member. *Rodriguez v. New York*, 10-CV-4661 (JG) (SMG) 2014 WL 12917808, at *6 (E.D.N.Y. Jan. 24, 2014) (quoting *Gonzales v. New York City Housing Auth.*, 77 N.Y.2d 663,

33

667-68 (1991)). *See also Gilbert v. Stanton Brewery*, 295 N.Y.
270, 273 (1946) (finding no recovery available under New York
law for loss of "minor daughter's companionship."); *Devito v.
Opatich*, 215 A.D. 2d 714 (2d Dep't 1995) (reversing damages
award because loss of minor daughter's society is not
compensable).

Furthermore, loss of services usually are not
"demonstrable" in the case where a child lived for only an
exceedingly short lifespan, as here, where the evidence
indicates that the decedent only lived for three hours. *Charles
v. Suvannavejh*, 907 N.Y.S.2d 362, 365 (N.Y. Sup. Ct. 2009)).
*See also Parilis v. Feinstein,* 49 N.Y.2d 984, 985-86 (N.Y.
1980)(holding when the decedent was an infant, the damages are
still a question of fact, and often difficult to measure).
"Despite the extensive mental anguish suffered by a family as a
result of the death of a young child, there is rarely adequate
proof of economic circumstances justifying a jury to award
damages." *In re Estate of Gayden*, No. 2007-1489/C 37 Misc.
3d 1213(A), at *3 (Oct. 9, 2012) (citations omitted).

Plaintiff failed to satisfy the necessary showing of a
loss of pecuniary support from the deceased minor at the
pleading stage.  Plaintiff's complaint states generally that she
was "deprived of . . . economic support," but does not provide
evidence or facts discussing and detailing services that an

infant who lived for three hours could have provided.   (Amended Compl. at ¶ 75.)   As plaintiff did not allege sufficient facts to demonstrate even "possibility" let alone "probability" of her loss of services claim, the court finds that the claim fails to meet the pleading standard necessary to show loss of pecuniary support.   *Santoro ex rel. Santoro v. Donnelly*, 340 F. Supp. 2d 464, 492-93 (S.D.N.Y. 2004).   Therefore, pursuant to New York state law, plaintiff's claim for loss of consortium or mental anguish is not cognizable and she cannot recover for damages.   Accordingly, the court GRANTS defendant's motion to dismiss the loss of services claim due to failure to state a claim upon which relief can be granted.

### B. Wrongful Death

In a wrongful death claim, plaintiff bears the burden of showing "(1) the death of a human being; (2) a wrongful act, neglect or default of the defendant that caused the decedent's death; (3) the survival of distributees who suffered pecuniary loss by reason of the decedent's death; and (4) the appointment of a personal representative of the decedent."   *Cerbelli v. City of New York,* 600 F.Supp.2d 405, 429 (E.D.N.Y. 2009) (internal quotation marks omitted) (citing *Chong v. New York City Transit Auth.,* 83 A.D.2d 546, 441 N.Y.S.2d 24 (2d Dep't 1981)).

Plaintiff fails to allege "pecuniary damages" caused by the death of her infant son.  *See Habrack v. Kupersmith*, No. 87 Civ. 4712, 1988 WL 102037, at *2 (S.D.N.Y. Sept. 23, 1988) (citing *Chong*, 441 N.Y.S.2d at 26) (dismissing wrongful death claim for failure to allege "that the[] distributees [of the Estate] have suffered pecuniary damage by reason of decedent's death").  *See also Melvin v. Cnty of Westchester*, No. 14-CV-2995 (KMK) 2016 WL 1254394, at *22 (S.D.N.Y. Mar. 29, 2016) (denying dismissal of wrongful death action where plaintiffs properly alleged damages for loss of "reasonable expectation of support" as pecuniary losses); *Quinn v. U.S.*, 946 F. Supp. 2d 267, 277 (N.D.N.Y. 2013)).  In addition, plaintiff did not have the legal capacity to bring suit on behalf of the deceased infant's estate, where she did not produce letters of administration appointing her as decedent's personal representative.  N.Y. Est. Pow. and Trst § 5-4.1; *id.* at § 1-2.13; N.Y. EPTL § 11-3.1 (2012); *Heath v. Banks*, No. 15CV4228CBAMDG, 2016 WL 5716817, at *5 (E.D.N.Y. Sept. 30, 2016), *aff'd*, 692 F. App'x 60 (2d Cir. 2017) (quoting *Palladino,* 590 N.Y.S.2d at 602 ("[o]nly a duly appointed personal representative may bring suit on behalf of a decedent" in New York).).

As plaintiff has failed to allege or provide evidence of her appointment as the personal representative for the Estate of Mustafa, she lacks the capacity to sue on behalf of the

estate.  Accordingly, defendant's motion to dismiss plaintiff's wrongful death claim is GRANTED.

**CONCLUSION**

For the foregoing reasons, the court GRANTS the government's motion to dismiss plaintiff's informed consent claim for lack of subject matter jurisdiction pursuant to Rule 12(b)(1); plaintiff's wrongful death and loss of services claims for failing to state a claim upon which relief can be granted under Rule 12(b)(6); plaintiff's negligence and medical malpractice claims on behalf of the estate of the deceased infant; and DENIES the motion to dismiss for plaintiff's negligence and medical malpractice claims in her individual capacity.  The parties shall confer and jointly advise the court via ECF, no later than one week from the date of this decision, as to how they intend to proceed.

**SO ORDERED.**

Dated: July 31, 2020
       Brooklyn, New York

```
_____/s/_____
```
**KIYO A. MATSUMOTO**

United States District Judge
Eastern District of New York